

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2006

# In Re: Prof Video

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1655

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"In Re: Prof Video " (2006). *2006 Decisions*. Paper 1329.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1329

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1655

IN RE: PROFESSIONAL VIDEO ASSOCIATION, INC.
*Debtor*

MICHAEL J. HORAN,
*Appellant*

v.

WILLIAM DANTON; VIDEO LOTTERY CONSULTANTS, INC.; PROFESSIONAL
VIDEO ASSOCIATION, INC.

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 01-cv-00488)
District Judge: Gregory M. Sleet

Argued: February 27, 2006

Before: SLOVITER, FUENTES, and BECKER, *Circuit Judges*

(Filed April 3, 2006)

ELWYN EVANS, JR., ESQ.
Suite 100
1232 King Street
Wilmington, DE 19899

LOUIS M. TARASI, JR., ESQ. (ARGUED)
COLM W. KENNY, ESQ.
Tarasi, Tarasi & Fishman
510 Third Avenue
Pittsburgh, PA 15219

*Attorneys for Appellant*

STEVEN E. ANGSTREICH, ESQ. (ARGUED)
Levy, Angstreich, Finney, Baldante, Rubenstein & Coren
1616 Walnut Street
5th Floor
Philadelphia, PA 19103

*Attorney for Appellees William Danton and Video Lottery Consultants, Inc.*

PACE REICH, ESQ. (ARGUED)
Pace Reich, P.C.
726 Meetinghouse Road
Elkins Park, PA 19027

*Attorney for Appellee Professional Video Association*

---

## OPINION OF THE COURT

---

BECKER, *Circuit Judge*.

This appeal by Michael Horan arises out of a dispute over a settlement agreement arrived at in Bankruptcy Court. Horan was a party to the settlement agreement, which relates to software rights. Horan first claims that the Bankruptcy and District Courts erred in their construction of the settlement agreement. He maintains that there was a breach of

the unambiguous terms of the agreement. He further claims that there was fraud under the agreement.

The critical question is whether Horan was entitled to certain software rights that he did not receive. The facts and procedural history are extremely complicated, but they are well known to the parties for whom we principally write. Hence we set forth only the basic background facts and limit our discussion largely to our *ratio decidendi*.

Horan is the Plaintiff. The Defendants are William Danton, Video Lottery Consultants, Inc., and Professional Video Association. In the 1980s, Horan invented a computer software program called "Elimination Draw Poker." Elimination Draw Poker operates in video game console format and allows players to engage in a computer-operated poker tournament. Horan copyrighted the program and obtained a patent for the game. Later, Elimination Draw Poker, its patent, copyright, rules, design, format, system and related hardware – termed "the Software Assets" by the settlement agreement at issue – were assigned to Professional Video Association ("PVA"). This assignment took place on or about April 27, 1985. Horan initially owned PVA, though eventually Horan and Danton developed an ambiguous business relationship involving the company.

According to the District Court, in 1993, Stephen Holniker, President of Amusement World, obtained the operating software for Elimination Draw Poker. Amusement World began to manufacture the game for PVA for demonstration only. In 1995, Amusement World developed network software to make the game operational.

Defaulting purchasers of PVA filed for Chapter 11 bankruptcy on January 6, 1995. Apparently, there were several disputes between Danton and Horan regarding the ownership of PVA. To resolve growing problems, a settlement agreement was entered on February 27, 1997, between Horan, Danton, Video Lottery Consultants ("VLC"), and PVA.[1] The terms of the settlement agreement are at issue in this appeal. As stated above, Horan claims that under the agreement he is entitled to certain software rights that he never received.

I.

The relevant portions of the settlement agreement state:

"Elimination Draw Poker" was patented at Patent No. 4,648,604 (the Patent). "Elimination Draw Poker" together with the Patent, related copyrights, rules, design, format, system and related hardware (the Software Assets) were assigned to PVA, a Delaware Corporation.
. . .

**1. GRANT OF EXCLUSIVE RIGHTS TO SOFTWARE ASSETS; INTERNET.**

a. PVA, with the joinder of Danton, hereby grants and conveys to Horan, all exclusive distribution and all other related rights in and to the Software Assets, *including any and all upgrades, updates, modifications, the name and/or new versions in* [several exclusive locations]. Horan's exclusive distribution rights arising out of the grant of rights to Horan by PVA of the Software Assets as set forth herein include, but are not limited to: any proceeds of sales, advertising, sponsorship and/or manufacturing which arises or results from the sale, distribution, demonstration or duplication of the Software Assets by Horan in the Exclusive Locations.
. . .

---

[1]VLC was owned by Danton, but little else is explained by the record.

**6. WARRANTY OF OWNERSHIP.** Danton and PVA warrants that PVA has exclusive ownership of the Software Assets and, subject to approval of the Bankruptcy Court as set forth herein, has the authority and power to transfer, convey, assign, sell, or grant the exclusive rights to the Software Assets as set forth herein to Horan. Danton and PVA acknowledges that this is a material representation of PVA and Danton and Horan is relying on such representations and warranty in connection with the Settlement Agreement.

(emphasis added.)

The agreement was entered despite an objection by Stephen Holniker. As stated above, Holniker's company, Amusement World, developed software for Elimination Draw Poker. Holniker was afraid that the agreement attempted to convey his company's software to Horan. Holniker's objection to the settlement agreement was denied. He then appealed the Bankruptcy Court's order approving the settlement, but later withdrew the appeal. According to Holniker, both Danton and Horan stated that they had no interest in his software. Moreover, a pre-trial order, including facts stipulated by all parties, states that Horan "at all times knew that he himself was not entitled to any ownership rights to the 'software program' owned by Amusement World, Inc."

On the basis of the agreement, Horan now appears to claim rights in:

(1) The new "version" of software created by Holniker and Amusement world;

(2) Software utilized in 38 machines that VLC purchased from Holniker and Amusement World in 1996;

(3) Software developed by Don Pierce for Fortune Entertainment Corporation ("FEC").

5

## II.

Against this background, we conclude the following:

First, Horan has no rights to the Holniker software. We agree with the Bankruptcy and District Courts that there is no ambiguity in the agreement such as might give Horan the rights to upgrades, updates, modifications, names, or new versions ("upgrades, etc.") not possessed or owned by PVA, but only by Holniker. Instead, PVA was only required to convey rights to that which it developed or acquired. Even if the settlement agreement were ambiguous, extrinsic evidence establishes that it was not the intent of the parties for PVA to convey to Horan any and all upgrades, etc. that existed *anywhere*. For example, the pre-trial order cited above states that Horan knew that he was not entitled to rights in the Holniker software. In short, the Bankruptcy and District Courts did not err in their construction of the settlement agreement as it relates to the Holniker software. Accordingly, we affirm on this point.

Second, the claim of fraud under the agreement is totally without foundation. We affirm on this point as well.

Third and finally, however, we will remand Horan's claim that Defendants failed to convey the rights in software created by software developer Don Pierce. In December of 1999, Pierce created a software package to run Elimination Draw Poker on a personal computer for FEC. FEC is apparently PVA's successor in interest and Danton appears to have been involved with both companies.

6

Horan contends that Pierce created a "new version" of the software and that, therefore, Horan is entitled to certain rights. Pierce testified that the software was not operational. Additionally, a regulatory firm that tests and approves gaming devices found Pierce's version of Elimination Draw Poker to be inoperable. On the other hand, Pierce also testified that the software was 99.9 percent complete and only needed hardware to be plugged in to operate. According to Pierce, that would take only a "couple days." Pierce stated that a demonstration version of the software had been completed and that "[e]verything worked."

The District Court found that because the software was not operational, it was not a "new version" of the Software Assets. Therefore, it reasoned, there was no breach of the settlement agreement. However, the findings on this point beg the question whether something that is "inoperable" counts as an upgrade, update, modification, or new version if it is 99.9 percent complete and just needs to be "hook[ed] . . . up."

We will, therefore, vacate and remand on this point so that the District Court, which may choose to remand to the Bankruptcy Court, may determine the facts relevant to the Pierce product. These facts include the product's effectiveness; its value to PVA, FEC, and Horan; and whether it can be considered an upgrade, etc.

For the foregoing reasons, we will affirm in part and vacate in part and remand for further proceedings in accordance with this opinion.